# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| **KIMBERLY BILLUPS, MICHAEL WARFIELD, and MICHAEL NOLAN,**<br><br>      **Plaintiffs,**<br>**v.**<br><br>**CITY OF CHARLESTON, SOUTH CAROLINA**<br><br>      **Defendant.** | Civil Action No. 2:16-cv-00264-DCN |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs have brought a straightforward First Amendment challenge. They contend that the City of Charleston's ("City") tour-guide licensing law is a content-based restriction on speech, one preventing them from communicating certain messages (but not others) to paying clients. To defend its license to talk, the City recasts it as a business regulation and argues that the First Amendment offers no protection for tour guides because they are compensated for their speech. The City's legal theory fails to square with Supreme Court precedent.

Plaintiffs will not belabor arguments made in their opening brief. Consistent with Local Civil Rule 7.07 DSC, Plaintiffs submit this brief to address matters raised initially in Defendant's response brief and the implications of the City's failure to address binding caselaw. For a full discussion of the issues relevant to this case, Plaintiffs refer the Court to their Memorandum of Law in Support of Motion for Preliminary Injunctive Relief (Doc. 5-1).

**ARGUMENT**

**I. THE TOUR-GUIDE LICENSING LAW VIOLATES THE FIRST AMENDMENT.**

One of the most striking things about the City's response brief is what it fails to address. First, the City ignores binding Supreme Court precedent in an attempt to avoid First Amendment scrutiny. By doing so, the City undermines its primary argument that the licensing law does not regulate speech. Second, instead of disputing Plaintiffs' description of the licensing law's purpose, the City reinforces the argument that the law is aimed at speech and therefore independently subject to strict scrutiny. And third, by disregarding precedent holding that First Amendment defenses must include evidence, the City fails to meet its burden under intermediate scrutiny. These omissions prove fatal to the City's defense and demonstrate that the City's tour-guide licensing law (Charleston, S.C. Code §§ 29-58 to -63, § 29-66, together with the definitions of "registered tour guide" and "temporary tour guide" contained in § 29-2) (collectively, "licensing law"), violate the First Amendment. What remains is the straightforward conclusion that Plaintiffs are likely to succeed on the merits.

**A. The Tour-Guide Law Is Triggered By Speech.**

Plaintiffs have established that speech triggers the City's tour-guide licensing law. *See* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. Relief ("Pls.' Mem.") at 2–4, 8–10. In an attempt to avoid review under the First Amendment, the City claims that when the government decides who is (or is not) qualified to speak as a tour guide it is not regulating speech at all, but is instead regulating a "business" transaction. *See* Def.'s Mem. in Opp. to Pls.' Mot. for Prelim. Inj. Relief ("Def.'s Opp.") at 2, 4, 12–14. The crux of the City's defense is that the First Amendment does not apply because tour guides are being paid. *See* Def.'s Opp. at 2, 4, 16, 21. That is

transparently illogical.[1] The City rests its legal theory on inapposite cases about the government's power to license occupations *generally*[2] while at the same time entirely ignoring on-point Supreme Court precedent. This failure to acknowledge controlling precedent is fatal in two separate ways.

First, that tour guides get paid for their speech is immaterial. The Supreme Court has made it clear that "the degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988); *see also Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2665 (2011). Indeed, the City's argument to the contrary is fatally undermined by many iconic First Amendment cases involving speech undergirded by a profit motive. *See, e.g., United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995) (honoraria for speeches and articles); *Simon & Schuster v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991) (book publishing); *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) (movie theaters); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) (newspaper industry). The City makes no effort to address

---

[1] Taken to its logical conclusion, the City's argument shrinks the First Amendment beyond recognition: it would offer no protection against regulatory efforts to prohibit authors from selling books written about Charleston without first having one's qualifications vetted by the government, nor would it protect journalists from being forced to pass a licensing exam before they could legally accept a job writing editorials about the city.

[2] For example, the City attempts to defend its tour-guide licensing law by invoking a series of cases involving economic regulations devoid of any First Amendment claims. *See e.g.*, Def.'s Opp. at 13 (citing *Watson v. Maryland*, 218 U.S. 173 (1910); *Dent. v. West Virginia*, 129 U.S. 114 (1889); *People v. Bowen*, 175 N.Y.S. 2d 125 (N.Y. Sp. Sess. 1958)). It also invokes a case involving a ban on soliciting customers on federal property, *Washington Tour Guides Ass'n v. National Park Service*, 808 F.Supp. 877 (D.D.C. 1992), to falsely assert that it upholds a restriction on talking to tour groups rather than simply on advertising. *See* Def.'s Opp at 27 n.129.

these cases. The First Amendment protects speech—including that of tour guides—regardless of whether compensation is paid.³

Second, the City makes no attempt to dispute Plaintiffs' argument under *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). Under *Humanitarian Law Project*, a law regulates speech wherever the "conduct triggering coverage under the statute consists of communicating a message." 561 U.S. at 28. And when courts determine whether a law restricts speech or merely "conduct," they must look both to the face of the law and to its "practical operation." *Sorrell*, 131 S. Ct. at 2663. The City ignores *Humanitarian Law Project* and *Sorrell* entirely and makes no effort to address either case.

Ignoring *Humanitarian Law Project* leads the City to misunderstand, for example, the import of its regulation of tour "escorts." The City acknowledges (as it must) that two different types of people can accompany tour groups for pay: tour guides (who must be licensed) and tour escorts (who need not be). *See* Def.'s Opp. at 15 n.80. The City's brief (quoting the testimony of Clerk of Council Vanessa Turner Maybank) explains the distinction by saying that tour guides (but not escorts) "engage in touring services," while escorts merely "assist in directing visitors" and "mak[e] sure the group walks safely from one point to another." *Id.* But that is *exactly* the point: A tour escort is allowed to say things like "wait until this light turns green" or "we are heading to that church up there." The licensing requirement applies if (and only if) the escort instead tells stories about the old slave market or describes a building's historical significance. In other words, the City confesses that "the conduct triggering coverage under the statute consists of communicating a message." *Humanitarian Law Project*, 561 U.S. at 28. That means

---

³ When tour guides interact with paying customers by telling stories and answering their questions about Charleston, they are engaging in protected speech. *See Sorrell*, 131 S. Ct. at 2667 ("[T]he creation and dissemination of information are speech within the meaning of the First Amendment." (citations omitted)).

4

this Court must apply strict scrutiny—a standard the City does not even suggest its law can survive.

The City's brief fails entirely to discuss controlling precedent governing the distinction between speech and conduct. That precedent is clear. The licensing law regulates speech, it is content based under *Humanitarian Law Project* because it is triggered by speech on a particular topic (guided tours), and it violates the First Amendment.

> B. **Strict Scrutiny Also Applies Because The Tour-Guide Licensing Law Is Justified Based On The Content Of Tour Guides' Speech.**

Even if the tour-guide licensing law were not content based on its face (which, as discussed above, it is), it would still be subject to strict scrutiny because it is motivated by the government's desire to influence the content of speech. Pls.' Mem. at 10–14 (citing *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015)). The City's brief addresses *Reed* only briefly, in its 101st footnote, attempting to distinguish that case because the restrictions in the sign code there hinged entirely on the communicative content of a sign. Def.'s Opp. at 21 n.101 (citing *Reed*, 135 S. Ct. at 2227). The City's brief, however, fails to mention that *Reed* also—indeed, on the very same page—acknowledges a "separate and additional category of laws that, though facially content-neutral, will be considered content-based regulations of speech," including "laws that cannot be justified without reference to the content of the regulated speech[.]" *Reed*, 135 S. Ct. at 2227 (internal quotation marks omitted). In other words, the City is right that *Reed* says that a law is content based if it makes distinctions based on the content of someone's speech. The problem is that the City ignores that *Reed* **also** says that a law is content based if (for example) it favors some speakers over others if that favoritism reflects a "content preference"— that is, if the government is trying to affect the content of public discourse by restricting who

5

may participate in it under certain circumstances.[4] 135 S. Ct. at 2230–31 (internal quotation marks omitted).

This failure to acknowledge binding precedent once again leads the City to make fatal concessions. For example, the City concedes that the law's testing regime is used to identify and license only those tour guides who have mastered "the City's most important historical facts."[5] *See* Def.'s Opp. at 5–6. The City also concedes that the licensing law's purpose is to ensure that tour guides have "sufficient knowledge" to conduct tours. *Id*. at 22. But these are justifications *based on speech* (the City wants tour guides to know important things about history because tour guides talk about history) and speaker-based restrictions that reflect a content preference (the City thinks guides who have passed its test will say better things than an unlicensed guide would). The plain teaching of *Reed* is that laws justified in these terms require strict scrutiny.

These admissions are not an accident; they are perfectly consistent with the City's previous public statements about the law's purpose. *See* Pls.' Mem. at 12–13 (quoting the City of Charleston Tour Guide Training Manual to show the City is concerned about the information and stories that tour guides convey to tourists). The fact that the City not only fails to dispute the law's content-based purpose but *affirmatively embraces it* means the City has, for all intents and purposes, ceded the case. The City is licensing tour guides because it is worried about (and wants to influence) the quality of guides' speech. That means its licensing law is subject to strict scrutiny—which, again, the City does not even contend it can survive.

---

[4] "Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Reed*, 135 S. Ct. at 2227.
[5] Inexplicably, the City provides passage-rate information for their licensing exams but avoids explaining why, after passing the 200-quesiton written exam, would-be guides must pass a second test, an oral examination involving government officials evaluating the content of their speech. Indeed, the City does not dispute Plaintiffs' contention that the City "scrutinizes the content of a would-be tour guide's speech during the oral exam before determining whether or not she can begin speaking," *See* Pls.' Mem. at 12.

### C. The City Fails To Meet Its Burden Under Intermediate Scrutiny.

Even if the tour-guide licensing law were only a content-neutral burden on speech, it would still be subject to at least intermediate scrutiny—a standard the City fails to correctly explain and therefore fails to meet.

The crux of the City's intermediate-scrutiny argument is its contention that it need set forth no evidence in support of its tour-guide licensing law because appeals to common sense and logic are sufficient. Def.'s Opp. at 21–22; *see also id.* at n.102. Not so. The most recent cases (ignored, again, by the City's brief) from both the Supreme Court and the Fourth Circuit make clear that the government bears a genuine burden under intermediate scrutiny—a burden the City cannot hope to meet here.

The City ignores *McCullen v. Coakley*, in which the Supreme Court squarely held that courts applying intermediate scrutiny under the First Amendment must consider things like the evidence supporting the government's assertions, the unusualness of a challenged law, and the availability of less-restrictive alternatives. 134 S. Ct. 2518, 2535–39 (2014). The City also ignores *Reynolds v. Middleton*, in which the Fourth Circuit recently clarified that, post-*McCullen*, "intermediate scrutiny does indeed require the government to present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary; argument unsupported by evidence will not suffice to carry the government's burden." 779 F.3d 222, 229 (4th Cir. 2015). Ignoring *McCullen*, *Reynolds*, and other First Amendment precedent means the City ignores key aspects of the intermediate-scrutiny analysis:

- Plaintiffs pointed out in their opening brief that in the Supreme Court's First Amendment precedent, there is no suggestion that the government may require a permit to speak in order to improve the *quality* of the speech. *See* Pls.' Mem. at 19

7

(citing *Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*, 536 U.S. 150 (2002)). But the City ignores *Watchtower Bible* and instead blithely asserts that it is regulating in order to ensure that guides have "sufficient knowledge" before being allowed to speak for pay.[6]

- Plaintiffs pointed out that, under *McCullen*, intermediate scrutiny requires an inquiry into the availability of less-restrictive alternatives—and that, in this case, the City has any number of less-restrictive alternatives available to it, like voluntary certification programs and targeted consumer-protection laws. *See* Pls.' Mem. at 20–21. The City ignores this issue entirely, providing the Court with no explanation whatsoever for its decision to eschew the less-restrictive means that other cities employ to regulate tour guides.

- *McCullen* also noted that a court's intermediate-scrutiny analysis must take into account the fact that a law is "exceptional" because unusual laws suggest that the government "has too readily forgone options that could serve its interests just as well, without substantially burdening" protected speech. 134 S. Ct. 2537 & n.6 (noting that the law challenged in that case was "truly exceptional" because only five localities had similar laws). And Plaintiffs' opening brief noted that the tour-guide licensing law is precisely as exceptional as the law in *McCullen*: Only five American cities license tour guides. *See* Pls.' Mem. at 4. The City ignores this issue entirely and defends its law entirely on the basis of city officials' "common sense." But *McCullen*

---

[6] The City's asserted interest—protecting tourists by prohibiting tour guides from speaking to tour groups if they lack "sufficient knowledge" of material contained in the government's 490-page tour guide training manual, *see* Def.'s Opp. at 22–23—is not legitimate. Indeed, even false speech is protected by the First Amendment. *See, e.g.*, *United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012).

teaches that courts cannot credit this kind of "common sense" without asking why that sense has apparently eluded the government of nearly every other city in the nation. The City's brief suggests no answer to this question.

The City's brief does include several lengthy block-quotes from *Kagan v. City of New Orleans*, 753 F.3d 560 (5th Cir. 2014), which held that tour-guide licensing satisfies intermediate scrutiny. *See* Def.'s Opp. at 20, 23. But presenting these extended quotations—almost entirely without analysis—is all the more striking given that the City fails to address the portion of Plaintiffs' opening brief demonstrating that *Kagan* is irreconcilable with the Supreme Court's decision in *McCullen v. Coakley*. *See* Pls.' Mem. at 21–22. The kinds of questions noted above, concerning the adequacy of evidence presented by the City or the availability of less-restrictive means, are exactly the kinds of questions that *McCullen* found dispositive under an intermediate scrutiny standard. *Kagan*, decided prior to the Supreme Court's decision in *McCullen*, failed to address those issues.[7]

***

That the City has very little to say in defense of its law is not surprising. The licensing of tour guides is incompatible with the Constitution: "[A] requirement that one must register before he undertakes to make a public speech . . . is quite incompatible with the requirements of the First Amendment." *Watchtower Bible*, 536 U.S. at 164. The City ignores *Watchtower* along with a series of binding Supreme Court decisions, including cases addressing whether First

---

[7] In stark contrast, the D.C. Circuit declined to follow the Fifth Circuit when it struck down D.C.'s tour-guide licensing law after looking to see whether there was evidence of any harms *caused by* unknowledgeable or unscrupulous tour guides; whether those harms were *actually addressed* by licensing; and whether those harms could be addressed in some *less-restrictive* way. *See Edwards v. District of Columbia*, 755 F.3d 996,1009 & n.15 (D.C. Cir. 2014) ("declin[ing] to follow [*Kagan*] . . . because the opinion either did not discuss, or gave cursory treatment to, significant legal issues").

9

Amendment scrutiny applies, determining whether laws are content based, recognizing that the First Amendment protects speech undergirded by a profit motive, and cases clarifying the government's evidentiary burden under intermediate scrutiny. The City has little to say in defense of its licensing law precisely because there is little it *can* say. The tour-guide licensing law is unconstitutional.

## D. Telling Stories Is Not Commercial Speech.

Tours are not commercial speech. The commercial-speech doctrine applies only to "speech proposing a commercial transaction." *Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980); *see, e.g.*, *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 64 (1983); *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 297 (4th Cir. 2013). Yet, the City's response contains a half-page footnote attempting to transform speech involving stories about history, historical figures, ghosts, pubs, and famous movie sets (among other subject matter discussed on tours) into commercial speech. *See* Def.'s Opp. at 27 n.129. The City misunderstands the commercial-speech doctrine and their argument fails as a matter of law.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS FAVOR GRANTING A PRELIMINARY INJUNCTION.

Plaintiffs have already established that they satisfy each of the remaining factors for granting a preliminary injunction. *See* Pls.' Mem. at 22–23 (irreparable harm); 23–24 (balance of equities); 24 (public interest). In their response brief, the City spends a lot of time talking about irreparable harm and the balance of the equities. *See* Def.'s Opp. 9–12. Yet the City cites no case—and Plaintiffs are aware of no case—in which a court found a likely First Amendment violation but denied a preliminary injunction based on any other factors. *See Newsom ex rel. Newsome v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 254 (4th Cir. 2003) (recognizing that a

plaintiff's claimed irreparable harm is "inseparably linked" to her claim for a violation of her First Amendment rights); *City of Lakewood*, 486 U.S. at 757–58 (self-censorship of speech caused by law treated as a harm).

## CONCLUSION

Plaintiffs have demonstrated that the City of Charleston's tour-guide licensing law violates the First Amendment. It fails under strict scrutiny and intermediate scrutiny. The City's response fails to rebut this. Indeed, it fails to so much as acknowledge controlling precedent—ignoring cases like *Humanitarian Law Project*, *Sorrell*, *Watchtower*, *McCullen*, and *Reynolds* entirely, while dealing with other cases like *Reed* or even the D.C. Circuit's decision in *Edwards* only in brief footnotes.

The City has failed to present a serious defense of a law that, right now, prevents Plaintiffs from speaking about topics of their choice to paying customers. This Court should grant a preliminary injunction.

Dated this 14th day of March, 2016.

Respectfully submitted,

**/s/ Sean A. O'Connor**

| | |
|---|---|
| Arif Panju* (TX Bar No. 24070380) | Sean A. O'Connor (District Court Bar No. 7601) |
| INSTITUTE FOR JUSTICE | FINKEL LAW FIRM LLC |
| 816 Congress Avenue, Suite 960 | 4000 Faber Place Drive, Suite 450 |
| Austin, TX 78701 | North Charleston, SC 29405 |
| Tel: (512) 480-5936 | Tel: (843) 576-6304 |
| Fax: (512) 480-5937 | Fax: (866) 800-7954 |
| Email: apanju@ij.org | Email: soconnor@finkellaw.com |

Robert J. McNamara* (VA Bar No. 73208)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: rmcnamara@ij.org

*Local Counsel for Plaintiffs*

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 14, 2016, I caused the foregoing Reply to be filed via ECF and that the court's ECF system automatically served counsel for Defendant.

<u>**s/ Sean A. O'Connor**</u>